```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
RICHARD L. SINGH and                    :
RAJKUMARI SINGH,                        :        **MEMORANDUM & ORDER**
                                        :
              Plaintiffs                :
     v.                                 :        CV-04-3877 (CBA)
                                        :
NORTH AMERICAN AIRLINES,                :
                                        :
              Defendant                 :
------------------------------------------------------------X
```

AMON, UNITED STATES DISTRICT JUDGE:

I.  Introduction

This is a civil action brought by plaintiffs Richard Singh ("Singh") and his wife Rajkumari for damages caused by Singh's detention, arrest and incarceration upon suspicion of having illegally imported drugs into the United States. Singh claims to have suffered serious emotional and personal injuries and deprivations of his civil rights, some of which are permanent in nature. Rajkumari claims the loss of services, society, companionship and consortium of her husband.

This Court having vacated its judgment dismissing the original complaint, Singh and his wife served a Verified Complaint invoking this Court's federal question and civil rights subject matter jurisdiction under 28 U.S.C. §§ 1331, 1343 and 1367. However, plaintiffs now contend that this Court does not in fact have subject matter jurisdiction over the action and moves for remand to state court, while defendant argues that the matter is properly in front of this Court. For the foregoing reasons, plaintiffs' motion to remand is denied.

1

II.     Facts

On July 17, 2003, Singh boarded a flight from Georgetown, Guyana to New York's JFK Airport. After arriving in New York and upon attempting to leave JFK Airport, Singh was arrested on the grounds that luggage bearing his name had been found to contain illegal drugs and controlled substances. Singh was incarcerated for almost nine months. In unrelated criminal prosecutions, two employees of Northwestern Airlines pled guilty to using passenger luggage to illegally transport drugs and controlled substances into the United States. This Court dismissed the criminal indictment against Singh on March 10, 2004.

Singh alleges that defendant was aware that its employees were transporting contraband and illegal substances in the names of lawful passengers and/or willfully ignored such practices and thus acted negligently in failing to prevent them from engaging in this activity. Singh argues this negligence was the cause of his and his wife's respective injuries.

III.    Background

The summons with notice, originally filed in the Supreme Court of the State of New York, Queens County, was removed to this Court by defendant on September 9, 2004. The notice alleged the nature of the actions as "Intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, negligent hiring, negligent supervision, negligent training, false arrest, malicious prosecution, false imprisonment, violation of plaintiff's Civil Right under USC § 1983 and fraud." Defendant's Notice of Removal alleged that "Plaintiff's federal claim arises under 29 U.S.C. § 1983. This is a civil action to enforce right under § 1983 and thus invokes the original jurisdiction of the United States District Court."

Defendant then filed a motion to dismiss the complaint for failure to state a cause of

action on October 26, 2004. At a status conference on October 27, 2004 before Magistrate Judge Gold, counsel for all parties agreed that "the federal question claim upon which removal of this action from state court was based", i.e., the § 1983 claim, "can not proceed" and plaintiffs agreed to "voluntarily dismiss the federal question claim and the parties will file a stipulation remanding this action to state court within thirty days." (Oct. 10, 2004, Minute Entry). On January 21, 2005, Magistrate Judge Gold noted that plaintiffs had neither complied with the October 27, 2004 Order nor entered a stipulation and consequently ordered plaintiffs to comply with his previous order. On March 4, 2005, plaintiffs still having failed to comply with the order, Magistrate Judge Gold issued a Report and Recommendation ("R&R") recommending that the case be dismissed and allowing objections to be filed no later than March 25, 2005. On April 20, 2005, no objections having been filed, this Court adopted the R&R dismissing the case.

On April 22, 2005, plaintiffs informed this Court by letter that they had not been served with the R&R, that defendant's counsel had informed them that it would not stipulate to the action's remand as it believed this Court had jurisdiction under the Airline Deregulation Act, § 49 U.S.C. 41 et seq ("ADA"), and that plaintiffs had consequently served a verified complaint on defendant on December 30, 2004, invoking this Court's subject matter jurisdiction pursuant to § 1331 (federal question), § 1343 (civil rights conspiracy) and § 1367 (supplemental jurisdiction). This verified complaint was not filed with this Court.

On May 2, 2005, plaintiffs' counsel requested leave to vacate the judgment. At a telephone conference on May 13, 2005, plaintiffs indicated that, despite serving defendant with a complaint invoking federal jurisdiction, they had then come to believe that the case should be remanded. Accordingly, this Court vacated the order of dismissal and directed both parties to

file papers within 30 days stating their positions as to whether this Court has jurisdiction over the claims. Both parties filed such papers on June 13, 2005. Plaintiffs argued that the matter should be remanded to state court and that their state court claims were not preempted by the ADA. Defendant argued that this Court had jurisdiction over the claims pursuant to both the ADA and the Convention for the Unification of Certain Rules Relating to International Transportation by Air, App. 29 U.S.C. § 40105 ("the Warsaw Convention" or "the Convention") and so plaintiffs' motion for remand should be denied.

Detecting confusion on the parts of both parties, the Court held a status conference on December 8, 2005, and explained that the ADA did not itself provide this Court with subject matter jurisdiction over the claims even if it applied, but was rather an affirmative defense that could be asserted against state law claims for damages. Defendant maintained its position that the case was properly before this Court under the Warsaw Convention if not the ADA. Plaintiffs took the position that, although their verified complaint had alleged that defendant "violated plaintiff Richard Singh's constitutional and common-law rights to be free from unreasonable and excessive use of force; his constitutional right to be free from detention; and his other rights under the State and Federal Constitution" and cited to 28 U.S.C. § 1343 (providing jurisdiction over claims for conspiracy to deprive the equal protection of the laws), they then wanted to "withdraw" and "discontinue" their civil rights claim and pursue "state negligence" as their sole claim. (Tr. 5: 21-23; 12:8-13; 13:7-9;18:1-7) As plaintiffs had not had the opportunity to brief the issue of whether the Warsaw Convention should apply to its negligence claim and, if it did, whether it provided this Court with subject matter jurisdiction, the Court ordered defendant to submit a supplemental brief stating its argument as to why the Warsaw Convention provides this

4

Court with subject matter jurisdiction over plaintiffs' claims, and gave plaintiffs the opportunity to reply to that argument.

In its supplemental brief, filed on December 14, 2005, defendant argued that this Court has jurisdiction because plaintiffs' claims fall under the Warsaw Convention.[1] In their reply, filed December 21, 2005, plaintiffs argued that their injuries did not fall under the Warsaw Convention and their claims are not preempted and should be remanded to state court.

IV.     Analysis

Under 28 U.S.C. § 1441(a), an action that was originally filed in state court may be removed by a defendant to federal court only if the case originally could have been filed in federal court. Caterpillar v. Williams, 482 U.S. 386, 392 (1987). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 USCS § 1447(c). This is true "irrespective of whether removal was proper at the time it was made." Villano v. Kohl's Dep't Stores, Inc., 362 F. Supp. 2d 418, 420 (S.D.N.Y. 2005).

Diversity among the parties does not exist for purposes of 28 U.S.C. § 1332. With regard to federal question jurisdiction, while both the removed state summons with notice and the

---

[1] Defendant's brief did not explicitly address whether the Warsaw Convention provides this Court with subject matter jurisdiction over plaintiffs' claims, but also did not make clear to what extent defendant was arguing that the claims "fall within the ambit of the Warsaw Convention." (Def.'s Mem, 2). Several cases defendant cited discuss the definition of an "accident," which is not part of the analysis used to determine if the injuries fall within the Warsaw Convention's scope (i.e., because they occurred on board or during the operations of embarkation or disembarkation), but is rather part of the inquiry to determine if the injuries satisfy the Warsaw Convention's liability requirements (i.e., that the injury was caused by an accident and was bodily or had a bodily manifestation). A finding of the latter, which would presuppose the former, would also compel this Court to hold defendant strictly liable for those injuries. The Court doubts that this is the conclusion defendant meant to urge upon the Court.

5

verified complaint contained allegations relating to civil rights violations, plaintiffs withdrew those claims and now pursue only a common law negligence claim. Defendant nonetheless argues that this Court may exercise jurisdiction over the plaintiffs' claims under the preemption provisions of the ADA and the Warsaw Convention.

The well-pleaded-complaint rule requires that a court assessing subject-matter jurisdiction consider only those allegations that a well-pleaded complaint would include. Sullivan v. Am. Airlines, Inc., 424 F.3d 267, 271 (2d Cir. 2005) (citing Rivet v. Regions Bank of La., 522 U.S. 470, 475 (1998)). Specifically excluded from the court's consideration are any possible defenses the plaintiff may have anticipated in his or her complaint, including federal preemption. Id. ("A defense is not part of a plaintiff's properly pleaded statement of his or her claim."). See also Caterpillar, 482 U.S. at 393 (holding that "a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue").

The corollary of the well-pleaded complaint rule is the artful-pleading doctrine, which will not allow a plaintiff to defeat federal subject-matter jurisdiction by artfully pleading his complaint so as to make his claims appear to arise under state law when they are in fact based on federal law. Sullivan, 424 F.3d at 272. A court will construe such a complaint as raising the federal claim it attempts to avoid. "The artful-pleading doctrine includes within it the doctrine of complete preemption," according to which "certain federal statutes are construed to have such 'extraordinary' preemptive force that state-law claims coming within the scope of the federal statute are transformed, for jurisdictional purposes, into federal claims - i.e., completely

6

preempted." Id. Thus understood, the doctrine of complete preemption, where it is held to apply, allows for a finding of federal jurisdiction based on the defendant's invocation of preemption, without regard to the plaintiff's complaint.

Although many statutes provide for ordinary or defensive preemption, only very few provide for complete preemption. In Beneficial Nat'l Bank v. Anderson, 539 U.S. 1 (2003), the Supreme Court held that sections 85 and 86 of the National Bank Act, 12 U.S.C. §§ 85-86, "provide the exclusive cause of action" for usury claims against national banks and therefore completely preempt analogous state-law usury claims. Id. at 11. The Court held that those provisions had "the requisite pre-emptive force to provide removal jurisdiction." Id. at 8. In reaching that conclusion, the Court noted that the National Bank Act was like the only other two statutes that had been held to completely preempt state law claims - portions of the LMRA and ERISA - in that it also "provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action." Id. See also Sullivan, 424 F.3d at 275-276 ("to determine whether a federal statute completely preempts a state-law claim within its ambit, we must ask whether the federal statute provides the exclusive cause of action for the asserted state-law claim") (internal citations omitted); Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 305 (2d Cir. 2004) (holding that, in Beneficial, the Supreme Court "extend[ed] the complete preemption doctrine to any federal statute that both preempts state law and substitutes a federal remedy for that law, thereby creating an exclusive federal cause of action."). Accordingly, under Beneficial, a statute will be considered to completely preempt claims that fall within its scope if the statute, 1) provides the exclusive cause of action for such claims, and 2) sets forth the procedures and remedies that govern that exclusive cause of action.

7

This Court must then determine whether the ADA or the Warsaw Convention provides complete preemption such that this Court may exercise subject matter jurisdiction over plaintiffs' common law negligence claims.

   A.   The ADA

The ADA provides that states "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier..." 49 U.S.C. § 41713(b). This type of ordinary or defensive preemption does not satisfy the Beneficial test. The ADA does not provide the exclusive cause of action for claims that fall within its scope, and it does not set forth the procedures and remedies for such claims. Since the ADA does not provide "complete preemption," it fails to provide this Court with subject matter jurisdiction over those claims even if the ADA did preempt them. Donkor v. British Airways, Corp., 62 F. Supp. 2d 963, 971 (E.D.N.Y. 1999) ("preemption by the Airline Deregulation Act cannot, by itself, provide grounds for removal to federal court"); Choice Neckwear, Inc. v. DHL Airways, Inc., No. 02-9580, 2003 U.S. Dist. LEXIS 17507, at *8 (S.D.N.Y. Oct. 1, 2003) ("neither Congress or the Supreme Court has declared that the ADA completely preempts state law").

The case law defendant cited in its June 13, 2005 brief does not support its position that this Court has jurisdiction under the ADA. In these cases, the courts either exercised diversity jurisdiction (e.g., Read-Rite Corp. v. Burlington Air Express, Ltd., 186 F.3d 1190, 1193 (9th Cir. 1999); Wagman v. Federal Express Corp., No. 94-1422, 1995 U.S. App. LEXIS 3111 (4th Cir. Feb. 17, 1995); Williams v. Northwest Airlines, Inc., 163 F.Supp. 2d 628, 631 (W.D.N.C. 2001); Kemper Ins. Cos. v. Federal Express Corp., No. 99-6083 2000 U.S. Dist. LEXIS 8213 (S.D.N.Y.

July 13, 2000); Deerskin Trading Post v. UPS of Am., 972 F. Supp. 665 (N.D. Ga. 1997); Vieira v. UPS, No. 95-04697, 1996 U.S. Dist. LEXIS 11223 (N.D. Cal. Aug. 5, 1996); Trujillo v. American Airlines, 938 F. Supp. 389, 391 (N.D. Tex. 1995)), or had some other basis for exercising federal subject matter jurisdiction over the state law claims presented (e.g., Smith v. America W. Airlines, 44 F.3d 344, 345 (5th Cir. 1995) (defendant was in Chapter 11 bankruptcy); Nazarian v. Compagnie Nat'l Air Fr., 989 F. Supp. 504, 507 (S.D.N.Y. 1998) (Foreign Sovereign Immunities Act)).[2] Absent such a basis, these courts would not have had jurisdiction to determine whether the claims were (defensively) preempted and would have been required to dismiss the claims for lack of subject matter jurisdiction. For these reasons, and as defendant implicitly conceded in its December 14, 2005 brief, the ADA does not provide this Court with subject matter jurisdiction over the dispute.

B. The Warsaw Convention

The Warsaw Convention exclusively governs the rights of passengers injured on international flights. El Al Israel Airlines, Ltd. v. Tseng, 525 U.S. 155, 161 (1999). The Convention applies to "all international transportation of persons . . . performed by aircraft for hire," Warsaw Convention art. 1(1), and provides that a "carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking." Id. art. 17. Article 24 of the Convention provides that claims for such damage "can only be brought

---

[2] The one decision that appears to support defendant's position, Lawal v. British Airways, 812 F. Supp. 713 (S.D.Tx 1992), was wrongly decided in this Court's opinion.

9

subject to the conditions and limitations set out in this Convention." Warsaw Convention art. 24.

Plaintiffs have not made a claim under the Warsaw Convention. The questions this Court must then answer are: 1) whether the Warsaw Convention preempts state law claims in the ordinary, defensive sense, or if it completely preempts them so as to convert them into federal claims, providing this Court with subject matter jurisdiction over them and, if so, 2) whether plaintiffs' claims fall within the scope of the Warsaw Convention.[3]

### 1. Preemption under the Warsaw Convention

The Supreme Court has not held in haec verba that the Warsaw Convention provides complete preemption. However, in El Al Isr. Airlines v. Tsui Yuan Tseng, 525 U.S. 155, 161 (1999), which was decided before the Court set out the two prong test for complete preemption in Beneficial, the Court concluded that the Warsaw Convention precludes a passenger from seeking remedies in state court for injuries that fall within the scope of the Convention but for which the Convention provides no relief. In reversing the Second Circuit Court of Appeals, the Court held that the Warsaw Convention created the exclusive remedy for causes of action within its scope. The Court explicitly held that "recovery for a personal injury suffered on board an aircraft or in the course of any of the operations of embarking or disembarking, if not allowed under the Convention, is not available at all." Tseng, 525 U.S. at 161 (internal citations omitted). After an exhaustive review of the treaty provisions, the Court concluded that the "text, drafting history, and underlying purpose of the Convention, in sum, counsel us to adhere to a

---

[3]The Court notes that the Warsaw Convention requires that a court must have both treaty jurisdiction under Article 28 and domestic subject matter jurisdiction. See Campbell v. Air Jamaica, Ltd., 863 F.2d 1 (2d Cir. 1988). As neither party has contested that defendant has its principal base of business in the United States, the Court finds that it has treaty jurisdiction over the claims and proceeds to the question of subject matter jurisdiction.

view of the treaty's exclusivity shared by our treaty partners." Id. at 176.

The provisions of the Warsaw Convention also meet the second prong of the Beneficial analysis, in that the statute sets forth procedures and remedies governing the exclusive cause of action provided therein. The Convention sets out detailed procedures for the causes of actions it creates and states which remedies are available for each. Article 17 addresses liability for injury to passengers, Article 18 provides for liability for damage to luggage, and Article 19 establishes liability in cases of delay. Articles 20 and 21 provide the carrier with certain defenses it may interpose, Article 22 sets limitations on damages and Article 23 invalidates other limitations on liability. Article 24 provides for the exclusivity of the Convention for causes of action brought under Articles 17, 18 and 19. Article 25 provides that the limits on damages shall not apply in cases of wilful misconduct. Article 26 provides for evidentiary presumptions with regard to liability for luggage. Article 27 allows the next of kin to sue on behalf of the deceased in case of death. Article 28 establishes in what jurisdictions a cause of action may be brought and provides that the suit shall be governed by that court's procedures. Article 29 provides a statute of limitations of two years. Finally, Article 30 sets out rules for apportioning liability among multiple defendants.

The Supreme Court confirmed in Tseng that the Convention provides a "comprehensive scheme of liability rules," 525 U.S. at 169, and in Olympic Airways v. Husain, 540 U.S. 644, 649 n.5 (2004), the Court reviewed the Convention's provisions regarding liability, burden of proof, damage caps and other procedural and remedial provisions. See also King v. American Airlines, 284 F.3d 352, 356-57 (2d Cir. 2002) ("the Warsaw Convention created a comprehensive liability system to serve as the exclusive mechanism for remedying injuries

11

suffered in the course of the international transportation of persons, baggage, or goods performed by aircraft") (internal quotation marks omitted). Accordingly, it is plain that the Convention completely preempts those claims which fall within its scope. The Convention "provide[s] the exclusive cause of action for the claim asserted and also set[s] forth procedures and remedies governing that cause of action." Beneficial, 539 U.S. at 8.

Although the Second Circuit has not directly decided the issue, other circuits and district courts in this circuit have held that the Warsaw Convention does completely preempt those claims that fall within its scope. See, e.g. Potter v. Delta Air Lines, 98 F.3d 881, 883 (5th Cir. 1996) (citing Boehringer-Mannheim Diagnostics, Inc. v. Pan American World Airways, Inc., 737 F.2d 456, 458 (5th Cir. 1984)); Husmann v. TWA, 169 F.3d 1151, 1153 (8th Cir. 1999); In re Mexico City Aircrash, 708 F.2d 400, 415 (9th Cir. 1983). See also Donkor v. British Airways, 62 F.Supp. 2d 963, 967 (E.D.N.Y. 1999) (Trager, J.) ("...defendants are correct in their assertion that the Warsaw Convention completely preempts the claims that it governs"); In re: Air Crash at Belle Harbor, New York on November 12, 2001, No. 01-4765, 2002 U.S. Dist. LEXIS 19836, at *9 (S.D.N.Y. Oct. 18, 2002) (Sweet, J.) (agreeing with other district and circuit courts that "the Warsaw Convention completely pre-empts state law causes of action"); Ajibola v. Sabena Belg. Airline, No. 95-2479, 1995 U.S. Dist. LEXIS 13507, at *4 (S.D.N.Y. Sept. 14, 1995) (Haight, J.).

Accordingly, plaintiffs' motion for remand must be denied if plaintiffs' claims fall within the scope of the Convention.

2. Application of the Warsaw Convention to Plaintiffs' Claims

Article 17 of the Warsaw Convention provides:

A carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

Warsaw Convention art. 17. The "'substantive scope' of this article extends to all 'passenger injuries occurring on board the aircraft or in the course of any of the operations of embarking and disembarking' - even if the claim is not actionable under the treaty." King, 284 F.3d at 359 (quoting Tseng, 525 U.S. at 172)). In other words, whether the injury was in fact caused by an "accident" and whether the injury is "bodily," as both terms are defined by the Convention, are inquiries upon which liability depends, but they are not reached unless the claims come within the scope of the Convention. Id. at 359 ("restriction[s] on liability affect[] neither the analysis of the substantive scope of the provision nor its preemptive effect").

At issue then is whether the claimed injury was caused by an event that occurred "on board the aircraft or in the course of any of the operations of embarking or disembarking."[4] In Buonocore v. Trans World Airlines, Inc., 900 F.2d 8, 10 (2d Cir. 1990), the Second Circuit articulated four factors to be considered "consistent with a flexible approach" to the question, namely: "(1) the activity of the passengers at the time of the accident; (2) the restrictions, if any, on their movement; (3) the imminence of actual boarding; and (4) the physical proximity of the passengers to the gate." Id. Considering these factors, the court distinguished that case from its previous decision in Day v. Trans World Airlines, Inc., 528 F.2d 31, 34 (2d Cir. 1975) as follows:

---

[4]The Court notes that it is not deciding whether the injuries alleged were bodily or were caused by an accident as those terms are defined by the Convention.

> The Day passengers were actively engaged in preparations to board the plane. By contrast, Buonocore had only checked in at the ticket counter and was in the public area near a snack counter. The second factor is the restrictions on the passengers' movement. The Day passengers had been herded in line and risked missing the flight if they strayed. Buonocore had ample time to roam freely about the terminal before his flight was called. The third factor is the imminence of actual boarding. The Day passengers were within minutes of boarding. Buonocore's flight was to depart almost two hours later. The fourth factor is the proximity of passengers to the gate. The Day passengers were at the gate. Buonocore was nowhere near the gate.

Buonocore, 900 F.2d at 10. Thus, it is plain that the plaintiff's location and activities are ordinarily essential to determining whether he was engaged in the operations of embarking or disembarking.

Plaintiffs, however, present an unusual situation. According to the complaint, after Singh checked his bags, defendant's employees placed tags bearing his name and identification on bags containing illegal drugs and controlled substances. These bags having been discovered by law enforcement agents, Singh was then detained and arrested "while attempting to exit JFK International Airport," (Complaint, ¶¶ 17-18) and subsequently wrongfully imprisoned for several months. (Complaint ¶ 19). The Buonocore test tracks the location and activity of the plaintiff to determine when and where the injury-causing event occurred, and that is usually the same as when and where the injury itself occurred. However, the injury-causing event in Singh's case, namely the mislabeling of the luggage, occurred at a time and place removed from the manifestation of the injury it caused, namely Singh's arrest. Accordingly, the Court must decide whether the determinative moment for purposes of Warsaw Convention preemption is when the injury-causing event or the caused injury itself occurred.

In King v. American Airlines, Inc., 284 F.3d 352, 358, 359 (2d Cir. 2002), the Court of Appeals for the Second Circuit articulated the inquiry as whether "the events giving rise to the claim occurred in the course of the international carriage of passengers and baggage" and also as "whether

14

a passenger is 'in the course of any of the operations of embarking' when the injury allegedly occurred." However, this case does not clearly resolve the issue here since the injury-causing event there, the allegedly discriminatory bumping, occurred at the same time as the injury it caused, i.e., the bumping itself.

In Pflug v. Egypt Air Corp., 961 F.2d 26 (2d Cir. 1992), the plaintiff was shot in the head while descending a movable staircase as she was forcibly evacuated by terrorists that had taken over the aircraft. She fell to the tarmac and feigned death for five hours until rescued by the airline's employees. Arguing that her claims did not fall within the Warsaw Convention, plaintiff noted that some of her injuries occurred while she lay bleeding on the tarmac, during which time she argued she was not engaged in the operations of disembarking. The Court of Appeals rejected this argument, holding that the question is whether "the <u>accident</u> occurred in the aircraft or during the operations of embarking or disembarking; it does not put any limitation on where the injuries can have occurred." Id. at 29-30 (emphasis in the original).

Likewise, in Prescod v. American Airlines, 383 F.3d 861 (9th Cir. 2004), the Court of Appeals for the Ninth Circuit was presented with a situation where the defendant misplaced and caused to be delayed by several days a bag containing the decedent's breathing machine. The decedent completed the flight, but then died after languishing for several days in a hospital near her destination. The Court of Appeals held that:

> [the decedent's] death, as opposed to the relevant accident, did not have to occur during the time periods specified in the Convention to be actionable. Instead an airline can be liable for a passenger's delayed reaction to an 'accident which caused the damage so sustained' so long as the accident took place, in the plain language of Convention Article 17, 'on board the aircraft or in the course of any of the operations of embarking or disembarking.'

Id. at 869. Indeed, the plain reading of Article 17's language focuses on the "accident which

15

caused the damage so sustained" and not the manifestation of the damage itself. "The Convention does not state that the ultimate injury or death, as opposed to the relevant accident, must occur at any particular time following the accident. Instead, a passenger's delayed reaction to an Article 17 accident resulting in injury or death is actionable so long as the accident itself took place 'on board the aircraft or in the course of any of the operations of embarking or disembarking." Id. at 869.

The only case law this Court has found that could be read to suggest the contrary result are cases wherein the airline is sued for the passenger's subsequent arrest. For example, in Schroeder v. Lufthansa, 875 F.2d 613 (7th Cir. 1989), the passenger sued the airline for injuries alleged to have been sustained when the airline turned her over for questioning to the police after a hoaxed bomb threat stated that she was carrying a bomb in her luggage. Although the police had taken custody of the plaintiff from the defendant airline, the court found that the injury was not sustained on the plane or in the course of the embarking or disembarking because the police "conducted their detention and search of [plaintiff] in the terminal building, away from the airplane." Id. at 618. Although this analysis seems to focus on the location of the injury, the case is distinguishable in that the plaintiff there was not alleging that any conduct on the airline defendant's part other than the handing-over itself was negligent. In other words, there was no allegation that the airline had been negligent in any way on board the aircraft or in the course of the operations of embarking or disembarking that had caused her to subsequently be turned over to the police where her injuries were then sustained.

In the present situation, the defendant's alleged negligence consisted of mislabeling luggage with Singh's identification. This mislabeling necessarily occurred after Singh checked in and provided defendant with his ticketing and luggage information. Although it is true that a passenger

16

has not necessarily begun embarking simply because he has checked in, particularly where, as in Buonocore, the passenger ceases to be so actively engaged, the process of checking in itself is considered an operation of embarkation. See, e.g., Day v. Trans World Airlines, Inc., 393 F. Supp. 217, 221 (S.D.N.Y. 1975) (including in its list of steps which a passenger must complete to embark, "presented their tickets to [defendant] at the checking desk on the upper level; 2. obtained boarding passes from [defendant]; 3. obtained baggage checks from [defendant]"). Unlike in Buonoco, where, after checking in, the plaintiff "walked some distance away from the [ticket] counter toward a mobile snack cart" and was in a public area of the airport when the accident occurred, Buonocore, 900 F.2d at 9, "the accident" here occurred in the process of checking in itself, a necessary element of which is the labeling of the checked luggage.

Moreover, once Singh checked in his baggage, any claim arising from its loss or damage thereto would have fallen under Article 18 of the Convention, which holds an airline liable for the "period during which the baggage or goods are in charge of the carrier, whether in an airport or on board an aircraft." Warsaw Convention art. 18(2). Interpreting the Convention as governing loss or damage to a passenger's luggage that occurs while it is in the defendant's control but not governing injury to the plaintiff himself that results from that very same control would produce an illogical result that should be avoided. Ehrlich v. Am. Airlines, Inc., 360 F.3d 366, 385 (2d Cir. 2004). Interpreting Article 17 as governing plaintiffs' claims avoids such a result.

The Court thus concludes that the injury-causing event, the mislabeling of narcotics-laden luggage with plaintiff Richard's identification, occurred during one of the operations of embarkation, and plaintiffs claims fall within the scope of Article 17 of the Warsaw Convention.

17

V.  Conclusion

Because this Court holds that the Warsaw Convention completely preempts those claims that fall within its scope so as to provide a district court with subject matter jurisdiction over such claims, and that plaintiffs' claims fall with the scope of Article 17 of the Warsaw Convention, plaintiffs' motion to remand is denied.

SO ORDERED

Dated: Brooklyn, New York
March 31, 2006

Carol Bagley Amon
United States District Judge